samuel e. goldstein & associates
samuel e. goldstein  (sbn 076559)
geoffrey a. munroe  (sbn 228590)
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone:  (925) 906-4700
facsimile:  (925) 906-4703

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

AUG 1 5 2006

MARKUS B. ZIMMER, CLERK
BY
DEPUTY CLERK

Attorney for Les Goodwin and Mary Lou Goodwin

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LES GOODWIN and MARY LOU GOODWIN, | NO. |
| Plaintiffs, | **COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT** |
| vs. | |
| HOLE NO. 4, LLC; PRUDENTIAL UTAH REAL ESTATE, | **JURY DEMANDED** |
| Defendants. | |

Judge Paul G. Cassell
DECK TYPE: Civil
DATE STAMP: 08/15/2006 @ 16:23:59
CASE NUMBER:  2:06CV00679  PGC

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

*Preliminary Allegations*

1.      Plaintiffs Les Goodwin and Mary Lou Goodwin are (and were at all times mentioned herein) citizens of the State of California.

2.      Plaintiffs demand trial by jury of all issues which are so triable.

3.      Defendant Hole No. 4, LLC ("Hole 4") is a limited liability company existing under the laws of the State of Utah and having its principle place of business in the State of Utah.

4.      Defendant Prudential Utah Real Estate ("Prudential") is a business entity of unknown style with a principal place of business in the State of Utah.  Plaintiff is informed and believes, and thereon alleges, that Prudential exists under the laws of a State other than California.

350550 CPL
Complaint FINAL
060809

-1-

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT

1    5.    The matter in controversy exceeds, exclusive of interest and costs, the sum

2  specified by 28 U.S.C. § 1332.

3  *The Turnberry Woods Development*

4    6.    This action concerns real property commonly known as 1274 W. Links Drive,

5  Midway, Utah, and more particularly described as Lot No. 12, Turnberry Woods P.U.D.

6  Phase I Plat A, according to the Official Plat thereof on file and of record in the Wasatch

7  County Recorder's Office (hereafter, Lot 12 or the "Property").

8    7.    Hole 4 is the developer of the Turnberry Woods Subdivision—a forty-acre

9  planned unit development in the City of Midway consisting of approximately 40 single-

10  family units along the 4th Hole of the Homestead Golf Course.

11    8.    Prudential is a real estate brokerage firm engaged by Hole 4 to market and

12  broker the sales of each of the Turnberry Woods units.   In doing the things alleged

13  herein, Prudential acted as the agent of Hole 4.

14  *Defendants' Real Estate Purchase Contract (REPC)*

15    9.    Well before construction commenced, Hole 4 solicited reservations—backed

16  by monetary deposits—for the purchase of planned units in the Turnberry Woods

17  Subdivision.  After viewing the site of the proposed development and reviewing marketing

18  materials while on a visit to Utah, Plaintiffs became among the very first to reserve a lot

19  within the development.

20    10.   In October 2004, Plaintiffs executed a Reservation Agreement for the lot

21  that would become known as Lot 12.  Under the terms of that agreement, Plaintiffs

22  deposited the sum of $5,000 to be held in a non-interest bearing account with Prudential

23  and applied to the purchase of Lot 12 upon closing or returned to Plaintiffs upon

24  termination of the Reservation Agreement.  The 1-page agreement specifically recited

25  that the "Reservation Agreement is non-binding until the execution of a Real Estate

26  Purchase Contract which shall supercede and replace this Reservation Agreement."

27    11.   In April 2005, Plaintiffs received a letter enclosing a Real Estate Purchase

28  Contract ("REPC") for Plaintiffs to sign and return to Prudential within 7 calendar days of

-2-

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700   facsimile: (925) 906-4703

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS
OF THE UTAH CONSUMER SALES PRACTICES ACT

1  Notice of Plat Recordation.  Prudential's letter stated that as a pre-construction

2  reservation holder the purchase price of $395,000 available to Plaintiffs was attractively

3  below prices then being quoted; and that by entering into the enclosed REPC, Plaintiffs

4  had the opportunity to "lock in" this below-market price of $395,000.  Prudential's letter

5  further emphasized the requirement of promptly executing and returning the enclosed

6  REPC by stating, "If by the contract deadline, the Reservation Holder does not sign and

7  return the REPC, Reservation Holder shall be deemed to have not elected to purchase the

8  home at Turnberry Woods... Reservation Holder shall have no further rights or obligation

9  to purchase."

10     12.     The REPC that was enclosed with the Prudential letter is attached hereto as

11  **Exhibit 1**, and incorporated by this reference.  The same form of agreement was utilized

12  by Prudential in selling each of the Turnberry Woods units.

13     13.     Prudential's REPC states in bold type at the top of the very first page, "Utah

14  law requires real estate licensees to use this form."  In fact, however, it is *not* the form

15  approved for mandatory use by the Utah Real Estate Commission and the Office of the

16  Utah Attorney General.  It is a form of contract which follows the general outline of the

17  State-approved form, but with terms that have been carefully altered to benefit the

18  developer (in this case, Hole 4).

19     14.     For the purposes of this action, the primary alteration from the State-

20  approved form concerns the remedies purportedly available to the buyer in the event of a

21  default by the seller.  Paragraph 16 of page 7 of Prudential's REPC, begins with nearly

22  identical language as Paragraph 16 of the State-Approved form (both are entitled

23  "DEFAULT"):  it affirms that in the event of a buyer default, the seller has the right to

24  retain the buyer's deposits as liquidated damages or pursue other remedies available at

25  law.  The second provision of Prudential's Paragraph 16, is quite different than the State-

26  Approved language, however:  It purports to limit the buyer's remedies upon a default by

27  the seller to a mere return of the buyer's deposits and interest thereon at the rate of ten

28  percent per annum.

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700   facsimile: (925) 906-4703

350550 CPL
Complaint FINAL
060809

-3-

1   _Hole 4's "Termination" of its REPC with Plaintiffs_

2   15.   Plaintiffs accepted Prudential's offer to "lock in" a purchase price of

3   $395,000 for Lot 12, and relying on that representation as well as the representation that

4   the REPC provided to them by Prudential was the form required to be used by the State of

5   Utah in such transactions, executed the REPC on May 5, 2005, and returned it to

6   Prudential as requested.

7   16.   Plaintiffs also deposited an additional $20,000 toward the purchase of the

8   Property (for a total deposit of $25,000), as required by the REPC.

9   17.   The REPC contemplated that construction on Plaintiff's lot would commence

10   within 6 months; however, Hole 4 requested that construction of Plaintiff's unit be

11   commenced at a later date as part of Phase II of the development.  Based upon Hole 4's

12   representation that construction of their unit would be completed, and escrow on their

13   purchase would close, in or about August 2006, Plaintiffs agreed.

14   18.   As Phase I of the Turnberry Woods progressed, and more and more parties

15   entered into REPCs for the purchase of Turnberry Woods units, the value of the Property

16   appreciated.  By July 2006 (a month before the Property was expected to be completed)

17   Turnberrywoods.com would advertise the prices of its units to prospective purchasers at

18   "[f]rom the $700,000's."

19   19.   In a letter dated October 6, 2005, the acting manager of Hole 4, David

20   Dowie, informed Plaintiffs, "Hole No. 4 LLC will not be able to fulfill its obligations under

21   the Real Estate Purchase Contract for unit 12 of the Turnberry Woods Subdivision," and

22   tendered return of Plaintiffs' $25,000 deposits plus interest of $876.36.

23   20.   Though the language just quoted could be read as a statement that Unit 12

24   cannot be built, that is not the case: the unit has been framed and at the current pace of

25   construction will be completed in or around August 2006, as previously promised.

26   21.   Both Plaintiffs and their attorney have requested in writing on multiple

27   occasions that Hole 4 withdraw its repudiation of its obligation to sell the Property to

28   Plaintiffs upon completion of construction.  In written responses from its attorneys, Hole 4

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700   facsimile: (925) 906-4703

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS
OF THE UTAH CONSUMER SALES PRACTICES ACT

1   has refused, taking the position that it has at all times acted in compliance with its

2   contractual obligations to Plaintiffs.  Hole 4 has stated that it construes Paragraph 16 of

3   the Prudential REPC to afford it the option to terminate the REPC for any reason upon

4   tender to the "Buyer" of a return of all deposits plus interest thereon at the rate of ten

5   percent per annum, and that the "Buyer" is afforded no further remedy under the REPC.

6   22.    The preceding allegations are incorporated into each of the following claims

7   for relief as if they were repeated in full below each respective heading.

### FIRST CLAIM FOR RELIEF

(Against Hole 4 for Breach of Contract by Anticipatory Repudiation)

23.    In doing the things alleged above, Hole 4 has clearly, positively, and

unequivocally refused to perform its obligation to sell the Property to Plaintiffs upon

completion of construction for the agreed purchase price of $395,000.  Plaintiffs elect to

treat this anticipatory repudiation as a breach of the REPC, and immediately seek the

remedies available to them in law and equity.

24.    For their part, Plaintiffs have performed all covenants and satisfied all

conditions which they were obligated to perform and satisfy, or their performance or

satisfaction has been excused.  Were it not for Hole 4's breach of the REPC, Plaintiffs

were also ready, willing, and able to perform all covenants and satisfy all conditions when

the same were due to be performed and satisfied (e.g., payment of the balance of the

purchase price).

25.    The Property is unique and highly desirable to Plaintiffs.  Plaintiffs cannot be

adequately compensated by an award of monetary damages, and would suffer irreparable

harm if they are denied the right to purchase the Property under the REPC.  The principal

terms of the REPC, as well as the parties' intentions in entering into the REPC, are clear

and unambiguous:  Hole 4 agreed to sell the Property to Plaintiffs for the purchase price

of $395,000 upon completion of construction on the Property (in or about August 2006,

per the parties' subsequent agreement).  Enforcing Hole 4's performance of its obligations

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700   facsimile: (925) 906-4703

350550 CPL
Complaint FINAL
060809

-5-

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS
OF THE UTAH CONSUMER SALES PRACTICES ACT

1    under the REPC to sell the Property to Plaintiffs for $395,000 would be relatively

2    uncomplicated, amenable to easy oversight, and eminently equitable.

3        26.    Besides loss of the use of the Property, due to Hole 4's breach of the REPC,

4    Plaintiffs will lose the appreciation in the value of the Property from the time they

5    committed to purchase the Property for $395,000.  Plaintiffs agree with Hole 4's valuation

6    of the Property at $700,000+, and therefore seek damages of $305,000 in the alternative

7    to specific performance.

8        27.    WHEREFORE, Plaintiffs pray for judgment against Hole 4, as follows:

9            a.    For an order compelling Hole 4 to perform its agreement to sell the

10                Property to Plaintiffs such that, within 20 days of entry of judgment,

11                Hole 4 is ordered to deposit with an escrow holder a grant deed

12                transferring title to the Property to Plaintiffs upon receipt of the

13                $370,000 balance of the agreed purchase price.

14            b.    In the alternative to an equitable order compelling Hole 4's

15                performance, for an award of damages to Plaintiffs in the amount of

16                $305,000.

17            c.    For an award of attorney fees and costs to Plaintiffs pursuant to the

18                REPC's provision awarding such fees and costs to the prevailing party

19                in an action to enforce the contract.

20            d.    For such other relief as the court deems just and proper.

21

22                        **SECOND CLAIM FOR RELIEF**

                (Against Hole 4 for Breach of Implied Covenant of Good Faith and Fair Dealing)

23        28.    Plaintiffs incorporate the allegations of their First Claim for Relief into this

24    Second Claim for Relief as if they were repeated under the heading of this claim.

25        29.    In doing the things alleged herein—in particular, construing Paragraph 16 so

26    as to allow it an absolute and arbitrary right to terminate the REPC merely by tendering

27    return of Plaintiffs' deposit plus $876.36 in interest—Hole 4 has breached the REPC's

28    implied covenant of good faith and fair dealing.  Hole 4's actions are inconsistent with the

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700   facsimile: (925) 906-4703

350550 CPL
Complaint FINAL
060809

-6-

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS
OF THE UTAH CONSUMER SALES PRACTICES ACT

REPC's agreed common purpose and with Plaintiff's justified expectations, and seek to deprive Plaintiffs of their right to receive the fruits of the REPC—namely, the unit 12 in the Turnberry Woods development.

30.   <u>WHEREFORE</u>, Plaintiffs pray for judgment against Hole 4, as follows:

a.   For an order compelling Hole 4 to perform its agreement to sell the Property to Plaintiffs such that, within 20 days of entry of judgment, Hole 4 is ordered to deposit with an escrow holder a grant deed transferring title to the Property to Plaintiffs upon receipt of the $370,000 balance of the agreed purchase price.

b.   In the alternative to an equitable order compelling Hole 4's performance, for an award of damages to Plaintiffs in the amount of $305,000.

c.   For an award of attorney fees and costs to Plaintiffs pursuant to the REPC's provision awarding such fees and costs to the prevailing party in an action to enforce the contract.

d.   For such other relief as the court deems just and proper.

### THIRD CLAIM FOR RELIEF

(Against Hole 4 for Declaratory Relief)

31.   An actual controversy has arisen between Plaintiffs and Hole 4 concerning the future rights and obligations of Hole 4 under the REPC entered into between Hole 4 and the contracting "Buyers" of units in the Turnberry Woods Subdivision, which include Plaintiffs.

32.   Hole 4 contends that Paragraph 16 affords it the absolute right to terminate its obligations to sell real property to those denominated "Buyers" under the REPC upon tendering return of the Buyer's deposit plus interest thereon at the rate of ten percent per annum. Hole 4 further contends that Paragraph 16 so limits Buyers so that if Hole 4 refuses to sell to Buyers the real property specified in the REPC for the agreed price,

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700   facsimile: (925) 906-4703

350550 CPL
Complaint FINAL
060809

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT

1  Buyers may only recover their initial deposit plus interest thereon at the rate of ten

2  percent per annum.

3      33.    Plaintiffs disagree, and contend that construing Paragraph 16 to afford Hole

4  4 an absolute right to terminate its obligations to sell real property to the Buyer under the

5  REPC, or to limit Buyers' remedies in the face of a refusal to sell the real property

6  specified in the REPC for the agreed price, would be unconscionable and/or a violation of

7  the implied covenant of good faith and fair dealing.  Plaintiffs contend that if Paragraph

8  16 is ever enforceable to limit Buyers' remedies, it is so only for unintentional defaults—

9  for instance if Hole 4 were unable to complete the contemplated construction because

10  the plans were not approved or construction was unfeasible.

11      34.    <u>WHEREFORE</u>, Plaintiffs pray for judgment against Hole 4, as follows:

12      a.    For a declaration by the court of Hole 4's rights and obligations under

13      the REPC stating that Paragraph 16 of the REPC is unenforceable to

14      deprive Buyer of any remedies otherwise available by law upon Hole

15      4's refusal to sell the real property therein to the "Buyer" for the

16      agreed price;

    b.    For an award of attorney fees and costs to Plaintiffs pursuant to the

17      REPC's provision awarding such fees and costs to the prevailing party

18      in an action to enforce the contract;

19      c.    For such other relief as the court deems just and proper

20

21           **FOURTH CLAIM FOR RELIEF**

22      (Against Hole 4 and Prudential for Negligent Misrepresentation)

23      35.    In doing the things alleged herein, Hole 4 and Prudential negligently made

24  false representations concerning material facts—in particular, that the REPC provided to

25  Plaintiffs  was the form which Utah law requires real estate licensees to use, and that by

26  executing and returning the REPC, Plaintiffs would "lock in" a price for which they could

27  purchase the Property.

28

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700  facsimile: (925) 906-4703

350550 CPL
Complaint FINAL
060809

-8-

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS
OF THE UTAH CONSUMER SALES PRACTICES ACT

1    36.    Hole 4 and Prudential should have reasonably foreseen that Plaintiffs were

2  likely to rely upon those representations.

3    37.    Plaintiffs did in fact reasonably rely on those representations in executing

4  the REPC, and as a result stand to suffer loss of the right to purchase the Property for

5  $395,000 upon completion of its construction.  Given Hole 4's reasonable valuation of the

6  Property at $700,000+ near the time of completion of construction, Plaintiffs' loss of this

7  right amounts to approximately $305,000 in damages.

8    38.    <u>WHEREFORE</u>, Plaintiffs pray for judgment against Hole 4 and Prudential, as

9  follows:

10          a.    For an award of damages to Plaintiffs against Hole 4 and Prudential,

               jointly and severally, in the amount of $305,000.

11          b.    For an award of costs of suit and such other relief as the court deems

12               just and proper.

13

14                          **FIFTH CLAIM FOR RELIEF**

15          (Against Hole 4 and Prudential pursuant to the Utah Consumer Sales Practices Act)

16    39.    Hole No. 4 regularly engages in the sale of residential real property;

17  Prudential regularly engages in soliciting and brokering of such residential real property

18  transactions.

19    40.    The actions of Hole 4 and Prudential described herein—in particular,

20  representing to Plaintiffs and other prospective buyers of residential real estate in the

21  Turnberry Woods Subdivision that the REPC provided to them was the form which Utah

22  law requires real estate licensees to use, and that by executing and returning the REPC,

23  Plaintiffs and other prospective buyers would "lock in" a price for which they could

24  purchase the Property—constitute deceptive acts or practices in violation of the Utah

25  Consumer Sales Practices Act. (Utah Code §13-11-4.)

26    41.    The actions of Hole 4 described herein—in particular, construing Paragraph

27  16 of the REPC so as to permit Hole 4 to terminate its obligations to sell real property for

28  an agreed price to those denominated "Buyers" under the REPC upon tendering of a

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700  facsimile: (925) 906-4703

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS
OF THE UTAH CONSUMER SALES PRACTICES ACT

return of the Buyers' deposit plus interest thereon at the rate of ten percent per annum, and to deny Buyers any further remedy under law or equity—constitute acts or practices in violation of the Utah Consumer Sales Practices Act. (Utah Code §13-11-6.)

42.     As a result of the alleged unconscionable and deceptive acts and practices, Plaintiffs stand to suffer loss of the right to purchase the Property for $395,000 upon completion of its construction.  Given Hole 4's reasonable valuation of the Property at $700,000+ near the time of completion of construction, Plaintiffs' loss of this right amounts to approximately $305,000 in damages.

43.     <u>WHEREFORE</u>, Plaintiffs pray for judgment against Hole 4 and Prudential, as follows:

a.     For a declaration that the delineated actions of Hole 4 and Prudential violate Utah Consumer Sales Practices Act.

b.     For temporary, preliminary and permanent injunctive relief enjoining Hole 4 and Prudential from utilizing the REPC in future residential real estate transactions; and for a temporary, preliminary and permanent injunctive relief enjoining Prudential from utilizing any Real Estate Purchase Contract not approved for mandatory use by the Utah Real Estate Commission.

c.     For an award of damages to Plaintiffs against Hole 4 and Prudential, jointly and severally, in the amount of $305,000.

d.     For an award of attorney fees to Plaintiffs pursuant to Utah Code §13-11-19(5).

e.     For an award of costs of suit and such other relief as the court deems just and proper.

DATED:     August 10, 2006          samuel e. goldstein & associates

By:  SAMUEL E. GOLDSTEIN
Attorney for  Error! Reference source not found.

samuel e. goldstein & associates
attorneys at law
1777 botelho drive, suite 345
walnut creek, california 94596-5084
telephone: (925) 906-4700  facsimile: (925) 906-4703

COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF, MISREPRESENTATION, AND FOR VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT

# EXHIBIT "1"

# REAL ESTATE PURCHASE CONTRACT
## FOR
## TURNBERRY WOODS

This is a legally binding contract. Utah law requires real estate licensees to use this form. Buyer and Seller, however, may agree to alter or delete its provisions or to use a different form. If you desire legal or tax advice, consult your attorney or tax advisor.

### EARNEST MONEY RECEIPT

Buyer ___LES AND MARY LOU GOODWIN_____ offers to purchase from Hole No. 4 LLC, a Utah limited liability company ("Seller"), the Property described below and hereby delivers to the Brokerage, as Earnest Money, the amount of $5000.00, in the form of which, upon Acceptance of this offer by all parties (as defined in Section 23) shall be deposited in accordance with state law.

Received by: ___Mark Sefton___ on __October 19, 2004___ (Date)
Brokerage: __Coldwell Banker___ Phone Number __435-649-4400__

### OFFER TO PURCHASE

1.  **PROPERTY:**

    **1.1     Location.** The Earnest Money Deposit is given to secure and apply on the purchase of a new Residence (the "Residence") described below to be constructed by Seller on a parcel of real property (the "Lot") located at: __1274 W. Links Drive_____, in the City of Midway, County of Wasatch, State of Utah, more particularly described as Lot No. __12___ of the Turnberry Woods Subdivision. The Purchase Price for the Residence includes the Lot.

    **1.2     Home Design.** Seller shall construct the Residence and related improvements in accordance with the Plans & Specifications approved by Buyer in Section 8. **(check applicable box):**

    [ ] _____ House Plan
    [ ] FHA/VA Approved Plan No.
    [ ] Plans and Declaration of Condominium **(check one):** [ ] AS RECORDED [ ] AS PROPOSED for Unit No. of the _____ Condominiums
    [X] a Custom Home (specify) per Plans & Specifications to be approved by Buyer in Section 8 below. Brentwood model

    **1.3     Improvements.** Seller represents that the Residence will be connected to the utility service lines and serviced by the additional improvements identified below. **(check applicable boxes):**

    **(a) Utility Services**
    [ ] well  [X] public water  [ ] private water  [X] natural gas  [X] electricity  [X] telephone
    [X] public sewer  [ ] septic tank  [ ] other (specify)_____

    **(b) Additional Improvements**
    [ ] dedicated paved road  [X] private paved road  [ ] other road (specify) _____
    [X] curb & gutter [ ] rolled curb [ ] sidewalk [ ] irrigation water/secondary system - # of shares _____ Name of water company_____
    [ ] other (specify)_____

    **1.4 Permit Fees.** Seller agrees to pay for building permit fees, impact fees and all connection fees.

Page 1     Buyer's Initials [ ]     Date 5-5-05     Seller's Initials [ ]     Date _____

**EXHIBIT**

**1**

2. **PURCHASE PRICE.** The Purchase Price for the Residence is $ 395,000.00
   2.1 **Method of Payment.** The Purchase Price will be paid as follows:

| | | |
|---|---|---|
| $ 5,000.00 | **(a)** | **Earnest Money Deposit. Under certain conditions described in this Contract, THIS DEPOSIT MAY BECOME TOTALLY NON-REFUNDABLE.** |
| $ 316,000.00 | **(b)** | **Permanent Loan.** Buyer agrees to apply for a "Permanent Loan" as provided in Section 2.3 below. Buyer will apply for one or more of the following loans: [ ] FHA  [ ] VA [ ] CONVENTIONAL [ ] OTHER (specify) _____ Buyer agrees to accept the Permanent Loan at the interest rate offered by Buyer's lender as of the date of Settlement. Buyer acknowledges that the loan interest rate at Settlement may exceed the rate quoted by the lender as of Loan Application. |
| $ 20,000.00 | **(c)** | **Additional Earnest Money Deposit.** This amount shall be due and shall become non-refundable to Buyer as provided in Sections 8.2 and 8.3 below. |
| $ 54,000.00 | **(d)** | **Balance of Purchase Price in Cash at Settlement** |
| $ 395,000.00 | | **PURCHASE PRICE.** Total of lines (a) through (d) |

The Purchase Price may be increased if additional costs are incurred for extras as provided in Section 12. Buyer agrees to pay for the cost of all such extras as provided in Section 8.4(d) and Section 12.

2.2 **Financing Condition. (check applicable boxes)**

(a) [X] the Permanent Loan shall be obtained by Buyer. Buyer's obligation to purchase the Residence **IS CONDITIONED** upon Buyer qualifying for the Permanent Loan. This condition is referred to as the "Financing Condition".

(b) [ ] Buyer's obligation to purchase the Residence **IS NOT CONDITIONED** upon Buyer qualifying for the Permanent Loan. Section 2.3 does not apply. If this Section 2.2(b) applies, then no later than the Pre-Qualification Deadline referenced in Section 24(b), Buyer shall provide to Seller: (i) a current financial statement certified by Buyer's CPA, accountant, or financial advisor; or (ii) other written documentation acceptable to Seller, (collectively referred to as "Proof of Funds"), evidencing Buyer's financial ability to close the purchase of the Residence. If Seller, in Seller's sole discretion, is not satisfied with the Proof of Funds provided by Buyer, Seller may cancel this Contract by providing written notice to Buyer no later than seven (7) days after the Pre-Qualification Deadline. In such event, the Earnest Money Deposit shall be released to Buyer and neither party shall have any further rights or obligations to each other under this Contract or otherwise.

2.3 **Loan Application.**

    (a) **Loan Application.** No later than the Application Deadline referenced in Section 24(a), Buyer shall apply for the Permanent Loan at a mortgage lender approved by Seller. Although Buyer agrees to apply for the Permanent Loan through a mortgage lender approved by Seller, Buyer may, in addition, apply for and obtain the Permanent Loan through any other mortgage lender of Buyer's choice. Loan Application occurs **only** when Buyer has: (i) completed, signed, and delivered to the lender (the Lender) the initial loan application and documentation required by the Lender; and (ii) paid all loan application fees as required by the Lender. Buyer agrees to diligently work to obtain the Applicable Loans. Buyer will promptly provide the Lender with any additional documentation as required by the Lender.

    (b) **Pre-Qualification Letter.** No later than the Pre-Qualification Deadline referenced in Section 24(b), Buyer agrees to provide to Seller a "Pre-Qualification Letter" from the Lender for the Permanent Loan in the form attached as Exhibit "A". Buyer agrees to diligently work to obtain the Pre-Qualification Letter.

    (c) **Right to Cancel.** If the Lender fails to provide Buyer with a Pre-Qualification Letter, or if the Pre-Qualification Letter contains conditions other than those specified on attached Exhibit "A", Buyer or Seller may cancel this Contract by providing written notice to the other party no later than three calendar days after the Pre-Qualification Deadline; whereupon the Earnest Money Deposit shall be released to Buyer. If this Contract is not canceled as provided in this Section 2.3(c), Buyer and Seller shall be deemed to have waived any objections regarding the lack of, or any conditions contained in the Pre-Qualification Letter

2.4 **Non-Refundable Deposit.**

    (a) **Pre-Qualification.** If this Contract is not canceled as provided in Sections 2.3(c) or Section 8, then **100%** of the Earnest Money Deposit shall be totally non-refundable to Buyer unless Seller fails to close the transaction in accordance with the terms of this Contract.

Page 2    Buyer's Initials _____    Date 5·5·05    Seller's Initials [    ]    Date_____

(b) **Subsequent Disqualification.** If prior to Settlement, Buyer receives written notice from the Lender that the Lender does not approve the Permanent Loan (a "Loan Denial"), Buyer shall, no later than three calendar days thereafter, provide a copy to Seller. Buyer or Seller may, within three calendar days after Seller's receipt of such notice, cancel this Contract by providing written notice to the other party; whereupon the non-refundable portion of the Earnest Money Deposit shall be released to Seller and the refundable portion to Buyer.

**3. SETTLEMENT AND CLOSING.** Seller shall provide Buyer written notice of Substantial Completion of the Residence. Settlement shall take place on or before the Settlement Deadline referenced in Section 24(f). Settlement prior to the Settlement Deadline shall require the mutual written consent of Buyer and Seller. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other (or to the escrow/closing office), all documents required by this Contract, by the Lender, by written escrow instructions and by applicable law; (b) any moneys required to be paid by Buyer under these documents (except for the proceeds of any new loan) have been delivered by Buyer to Seller or to the escrow/closing office, as appropriate, in the form of collected or cleared funds; and (c) any moneys required to be paid by Seller under these documents have been delivered by Seller to Buyer or to the escrow/closing office, in the form of collected or cleared funds. Seller and Buyer shall each pay one-half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Taxes and assessments for the current year, and interest on assumed obligations shall be prorated at Settlement as set forth in this Section. Prorations set forth in this Section shall be made as of the Settlement Deadline date referenced in Section 24(f), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The transaction will be considered closed when Settlement has been completed, and when all of the following have been completed: (a) the proceeds of any new loan have been delivered by the Lender to Seller (or to the escrow/closing office); and (b) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in parts (a) and (b) of the preceding sentence shall be completed within four calendar days after Settlement.

**3.1 Walk-Through Inspection/Repairs After Closing.** Buyer may conduct a "walk-through" inspection of the Residence prior to Settlement. The walk-through shall take place no later than five (5) days after Buyer's receipt of the Notice of Substantial Completion referenced in Section 11 below. The walk-through inspection shall only be for the purpose of identifying any minor corrective or repair work ("Minor Repair Work") that needs to be completed. Seller agrees to undertake and complete such Minor Repair Work. If, as of Settlement, Minor Repair Work remains, this shall not alter Buyer's obligation to complete Settlement by the Settlement Deadline referenced in Section 24(f).

**4. POSSESSION.** Seller shall deliver physical possession to Buyer within: [ ] _____ HOURS _____ [ ] DAYS after Closing [X] OTHER (specify) _Upon Recordation_

**5. CONFIRMATION OF AGENCY DISCLOSURE.** At the signing of this Contract:
[    ] Seller's Initials _PK/TW_ Buyer's Initials
The Listing Agents, _Court Klekas and David Walbeck_____, represent [X] Seller [ ] Buyer [ ] both Buyer and Seller as a Limited Agent
The Selling Agent _Mark Seltenrich, Coldwell_ represents [ ] Seller [X] Buyer [ ] both Buyer and Seller as a Limited Agent
The Listing Broker _Dougan Jones, Prudential Utah Real Estate_, represents [X] Seller [ ] Buyer [ ] both Buyer and Seller as a Limited Agent
The Selling Broker _Steve Webby, Coldwell_____, represents [ ] Seller [X] Buyer [ ] both Buyer and Seller as a Limited Agent

Buyer is advised and hereby acknowledges that: (a) David Dowie is a member of North American Partners II LLC, a Utah limited liability company, which has an ownership interest in, and is manager of Hole No. 4 LLC, a Utah limited liability company ("Seller"); and (b) David Dowie, is a licensed Real Estate Agent in the State of Utah and is affiliated as an agent with Prudential Utah Real Estate.

**6. TITLE INSURANCE.** Unless Buyer owns the Lot on the date of Acceptance Seller agrees to pay at Settlement, for a standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. Buyer acknowledges that additional title insurance coverage against mechanic's liens may be available, at Buyer's expense, through an extended coverage or plain language title policy. Buyer is advised to consult with a title insurance company during Buyer's Evaluations & Inspections regarding the availability and cost of such coverage.

Page 3     Buyer's Initials _____ Date _5·5·05_     Seller's Initials [        ]     Date_____

7. **SELLER DISCLOSURES**. No later than the Seller Disclosure Deadline referenced in Section 24(c), Seller shall provide to Buyer the following documents which are collectively referred to as the "Seller Disclosures":
  (a) a Seller property condition disclosure for the Property, signed and dated by Seller;
  (b) a commitment for the policy of title insurance (if the Buyer does not own the Lot);
  (c) a copy of the recorded CC&R's and Plat for the Development , if any;
  (d) written notice of any claims and/or conditions known to Seller relating to environmental or other problems;
  (e) Plans & Specifications for the Residence, or reduction copies thereof (with each page initialed by Seller);
  (f) Name of contractor and contractor's license number;
  (g) Builder's Limited Warranty; and
  (h) Other (specify) _____

8. **EVALUATIONS AND INSPECTIONS**. Buyer's obligation to purchase under this Contract is conditioned upon Buyer's approval of the content of each of the Seller Disclosures referenced in Section 7(collectively referred to as the "Evaluations & Inspections"). Unless otherwise provided in this Contract, the Evaluations & Inspections shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with the Evaluations & Inspections.

  **8.1 Right to Cancel.** If Buyer is not satisfied with the content of the Seller Disclosures, Buyer may cancel this Contract by providing written notice to Seller no later than the Evaluations & Inspections Deadline referenced in Section 24(d). Upon receipt of a copy of such written notice of cancellation, the Brokerage is authorized and directed to release the Earnest Money Deposit to Buyer. If Buyer fails to cancel this Contract as provided in this Section 8.1, Buyer shall be deemed to have approved the Seller Disclosures.

  **8.2 Release of Earnest Money.** In the event: (a) the Financing Contingency has been removed as provided in Section 2.2(b) or 2.4(b) above; and (b) Buyer has approved the Evaluations & Inspections as provided in Section 8.1 above, then no later than three (3) days after the Evaluations & Inspections Deadline, Buyer shall advance directly to the Seller an Additional Earnest Money Deposit in the amount of $20,000.00. Upon delivery of the Additional Earnest Money Deposit to Seller, Buyer also authorizes and directs the Brokerage to release the initial $5,000 Earnest Money Deposit to the Seller without any further signatures necessary.

  **8.3 Non-Refundable Earnest Money Deposits. Buyer acknowledges that upon deposit of the Additional Earnest Money Deposit with the Brokerage, the combined Earnest Money Deposits (totaling $25,000.00), shall be totally non-refundable to Buyer unless Buyer fails to close the transaction in accordance with the terms of this Contract.** Except as provided in Section 16 below, the combined Earnest Money Deposits may only be used by Seller for construction of the Residence, construction of surrounding site improvements and landscaping, payment of real estate commissions, and related expenses.

  **8.4 Pre-construction Meeting.** No later than sixty (60) calendar days after written Acceptance, Buyer and Seller shall have a *Pre-construction Meeting* at the Turnberry Woods Development or other location selected by Seller. At the *Pre-construction Meeting* the following shall occur:
  (a) Buyer and Seller shall approve the *Plans & Specifications* for the Residence to be constructed on the Property;
  (b) Buyer and Seller shall sign a written agreement which identifies the final *Options and Extras* for the Residence.
  (c) Buyer and Seller shall complete the *Construction Authorization Form,* and Seller shall provide Buyer an estimated date for "Commencement of Construction". For the purposes of this Contract, Commencement of Construction shall be defined as the date Seller obtains a Building Permit from the City of Midway for the construction of the Residence. Buyer acknowledges and agrees that Seller is responsible for the construction of multiple homes in the Turnberry Woods Development. Consequently, as a material consideration in Seller's Acceptance of this Contract, Buyer acknowledges and agrees that Seller shall have considerable flexibility in the timing of *Commencement of Construction* for the Residence. In no event however, shall *Commencement of Construction* be any later than 180 days after the Evaluations & Inspections Deadline.
  (d) Any Options & Extras selected by the Buyer shall be paid in full at the conclusion of the *Pre-construction Meeting.* This additional Options & Extras Deposit is also non-refundable and shall be   released directly to Seller at the conclusion of the Pre-Construction Meeting, or as otherwise agreed by Seller in writing. The Options & Extras Deposit may only be used by Seller for construction of the Residence.

Page 4    Buyer's Initials _____    Date _5·5·05_    Seller's Initials [        ]        Date_____

**9. ADDITIONAL TERMS.** There [X] ARE [ ] ARE NOT addenda to this Contract containing additional terms. If there are, the terms of the following addenda are incorporated into this Contract by this reference: [ ] Addendum No. _____ [X] Hold Harmless Agreement attached as Exhibit "B"   [ ] FHA/VA Loan Addendum   [ ] Other (specify) _____

**10. SELLER WARRANTIES & REPRESENTATIONS.**

10.1 **Condition of Title.** Unless the Buyer owns the Lot on the date of Acceptance, Seller represents that Seller has fee title to the Property and will convey good and marketable title to Buyer at Closing by general warranty deed. The Residence will be delivered to Buyer at Closing, free and clear of mechanic's liens and claims for mechanic's liens. Buyer agrees however, to accept title to the Property subject to: easements; deed restrictions; CC&R's (meaning covenants, conditions and restrictions), and rights of way; and subject to the contents of the Commitment for Title Insurance as agreed to by Buyer under Section 8. Buyer agrees to be responsible for taxes, assessments, homeowner's association dues, utilities, and other services provided to the Property after Closing. If Seller owns the Lot, Seller will pay off by Closing, all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. Seller agrees to pay current at Settlement all assessments and homeowners association dues.

10.2 **Condition of Property.** Seller is providing a Builder's Warranty under Section 7(g)

**11. SUBSTANTIAL COMPLETION.** The Residence shall be considered "Substantially Complete" when occupancy of the Residence is allowable under the rules, ordinances and laws of the appropriate civil jurisdiction in which the Residence is located. In the absence of such governmental regulations, Substantial Completion shall be when the Residence is ready for occupancy and only minor work remains to be completed, corrected or replaced on the Residence. Subject to the exceptions referenced in Section 12, the Substantial Completion Deadline shall be as referenced in Section 24(e). Seller shall provide Buyer written notice of Substantial Completion of the Residence.

11.1 **CONSTRUCTION ACCESS & RISKS.** Buyer agrees that during the period of construction Seller shall have the unrestricted right to access the Lot for the purpose of construction of the Residence and any necessary subdivision improvements. Buyer shall have the right to reasonable inspection of the Residence. Provided however, Seller reserves the right to limit Buyer's inspection of the Residence in order to not hinder, interfere, or delay the work. Buyer understands that a construction site poses certain hazards and risks. Therefore, if Buyer enters the Residence and/or the construction site prior to completion of construction, Buyer does so at his/her sole risk. Further, Buyer shall not suggest or encourage any other person to enter the Residence and/or the construction site without the prior written approval of Seller. Without limiting the generality of the foregoing, prior to Substantial Completion of the Residence, Buyer, his agents, employees and contractors, shall not perform any work or supply any materials relating to any improvement, alteration or change on or about the Residence, without the prior written consent of Seller. Any violation of this Section 11.1 will constitute a material breach of this Contract. Buyer understands and agrees that if at any time before Substantial Completion of the Residence, Buyer, any member of Buyer's family, or any other person who at the request, suggestion, permission, or knowledge of Buyer or any family member of Buyer (collectively the "Invitee"), enters the Residence and/or the construction site, with or without Seller's written approval, Buyer and/or any such Invitee(s) assume all risk of bodily injury while doing so. Buyer agrees to defend Seller with legal counsel or Seller's choice, and indemnify and hold Seller harmless from any and all claims, liabilities, personal injuries or other damages incurred by Buyer or any such Invitee(s) under any theory of law, or from any damage to the Residence or other property of Seller or others, or injury to any other person caused by or resulting from the actions of Buyer or any such Invitee(s) while on or in the vicinity of the Residence. As between Buyer and Seller, Seller shall bear the risk of loss or damage to the Residence as provided in Section 20 below, except for damage done or caused by Buyer or any Invitee, for which Buyer shall be solely responsible.

**12. PLANS AND SPECIFICATIONS.** The Plans & Specifications contain descriptions of the type of materials to be used in finishing the Residence, a dollar allowance for specific items (including landscaping, if applicable), and copies of the floor plans and elevations for the Residence. Buyer's selection of color, grade and type of finishing materials (including appliances, floor coverings, fixtures, cabinets, etc.) may differ from the Plans & Specifications, and may change the Substantial Completion Deadline and the Purchase Price. No change shall be made to the Plans & Specifications except by a written Change Order signed in advance by Buyer and Seller which sets forth: (a) the change to be made; (b) any adjustment in the Purchase Price; and (c) any change in the Substantial Completion Deadline. All changes shall be paid for at the time of signing the Change Order or as mutually agreed in writing by the parties. Seller agrees to construct the Residence in substantial compliance with the Plans & Specifications. Buyer acknowledges that the Residence, upon Substantial Completion, may vary from exact dimensions shown on the Plans & Specifications. Buyer agrees that so long as the Residence is constructed substantially in accordance with the

Page 5        Buyer's Initials _____        Date 5.5.05        Seller's Initials [        ]        Date _____

Plans & Specifications, Buyer will have no right to rescind this Contract; nor will Buyer be entitled to any legal or equitable claim, or to any adjustment of the Purchase Price, on account of alleged discrepancies in square footage calculations. Furthermore, subject to the cost and availability of materials, Seller reserves the right to substitute materials of substantially equivalent quality and/or brand in completion of the Residence. To the extent that a choice of color, grade, or type of material is required, Buyer shall notify Seller in writing of such selections no later than **10 DAYS** after receipt of Seller's written request for such selections. If Buyer has not notified Seller in writing of such selections as set forth above, Seller shall have the right to make said selections, at Seller's sole discretion, reasonably exercised, to avoid delay in Substantial Completion of the Residence.

**12.1. CONSTRUCTION COMPLIANCE.** Construction of the Residence shall be in accordance with the standards and requirements of all applicable Federal, State, and Local governmental laws, ordinances and regulations, and in compliance with restrictive covenants applicable to the Lot. If any regulatory requirements for construction of the Residence change during the course of construction and result in an increase in the costs of labor and/or materials, the Seller reserves the right to adjust the Purchase Price for the Residence to correspond with such regulatory changes. In such event, the Seller shall provide the Buyer with a specific description of the regulatory change(s) and an itemization of the costs incurred to comply with the change(s).

**12.2. UNAVOIDABLE DELAY.** In the event the Residence is not Substantially Complete by the date provided in Section 24(e) of this Contract due to interruption of transport, availability of materials, strikes, fire, flood, weather, governmental regulations, acts of God, or similar occurrences beyond the control of the Seller, the Substantial Completion Deadline shall be extended for a reasonable period based on the nature of the delay.

**12.3 INSURANCE.** During the period of construction and until Closing, the Seller shall maintain in full force and effect, at the Seller's expense, an all-risk insurance policy for the full replacement value of all completed portions of improvements included in the Residence; and all construction materials located on-site; complete coverage workmen's compensation insurance to insure against all claims of persons employed to complete the Residence; and, unless otherwise provided herein, public liability insurance in an amount not less than **$500,000.**

**12.4 PROTECTION AGAINST LIENS AND CIVIL ACTION.** Notice is hereby provided in accordance with Section 38-11-108 of the Utah Code that under Utah law, Buyer may be protected against liens being maintained against an "owner-occupied residence" and from other civil action being maintained to recover monies owed for "qualified services" performed or provided by suppliers and subcontractors as a part of this Contract, if and only if the following conditions are satisfied: (a) Buyer must enter into a written contract with either an "original contractor" who is properly licensed or exempt from licensure, or with a "real estate developer"; (b) required building permits must have been obtained; and (c) Buyer must pay Seller in full in accordance with this Contract and any written amendments to this Contract. Buyer must be the owner of an owner-occupied residence that is a detached single-family unit or duplex.

**12.5 Insulation.** Pursuant to the Federal Trade Commission's Trade Regulation Rule on Labeling and Advertising of Home Insulation (16 C.F.R., Part 460), set forth below is information for Residences to be constructed by Seller.

| Location | Type | Thickness (Inches) | R-Value |
|----------|------|--------------------|---------| 
| Exterior Walls | Fiberglass Batt | 6 inches | R-19 |
| Roof | Fiberglass Batt | 12 inches | R-38 |

Buyer understands and acknowledges that the data on the previous page regarding insulation, thickness and R-values may vary depending on local conditions and vagaries in construction including, but not necessarily limited to, such items as window openings in walls (which displace insulation thickness, etc.). Buyer agrees that information regarding R-value is based solely on information given to Seller by the appropriate manufacturers based on the thickness listed. Buyer agrees that Seller is not responsible for any such manufacturer's errors.

**13. AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company, or other entity, the person executing this Contract on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

**14. COMPLETE CONTRACT.** This Contract together with its addenda, any attached exhibits, and Seller Disclosures, constitutes the entire Contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties. This Contract cannot be changed except by written agreement of the parties.

Page 6    Buyer's Initials [ ] Date 5·5·05    Seller's Initials [      ]        Date_____

**15. DISPUTE RESOLUTION.** The parties agree that any dispute, arising prior to or after Closing, related to this Contract **SHALL** first be submitted to mediation. If the parties agree to mediation, the dispute shall be submitted to mediation through a mediation provider mutually agreed upon by the parties. Each party agrees to bear its own costs of mediation. If mediation fails, the other procedures and remedies available under this Contract shall apply. Nothing in this Section 15 shall prohibit any party from seeking emergency equitable relief pending mediation.

**16. DEFAULT.** If Buyer defaults, Seller may elect either to retain the Earnest Money Deposit(s) and Options & Extras Deposits, if any, as liquidated damages, or to return the Earnest Money Deposits and Options & Extras Deposits, if any, and sue Buyer to specifically enforce this Contract, or pursue other remedies available at law. If Seller defaults, Buyer agrees that Buyer's sole and exclusive remedy shall be to receive a return of Buyer's Earnest Money Deposits, the Options & Extras Deposit(s), if any, plus 10% interest thereon from the date of original deposit with Seller.

**17. ATTORNEY FEES AND COSTS.** In the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees. Attorney fees shall not be awarded for participation in mediation under Section 15.

**18. NOTICES.** Except as provided in Section 23, all notices required under this Contract must be: (a) in writing; (b) signed by the party giving notice; and (c) received by the other party or the other party's agent no later than the applicable date referenced in this Contract.

**19. ABROGATION.** Except for the provisions of Sections 7(g), 10.1, 10.2, 12, 12.1, 15, 17, and Exhibit "B" (all of which Sections and provisions shall survive Closing) the other provisions of this Contract shall not apply after Closing.

**20. RISK OF LOSS.** Except as provided in Section 11.1 above, all risk of loss to the Residence, including physical damage or destruction to the Property or its improvements due to any cause, except loss caused by a taking in eminent domain, shall be borne by Seller until Seller delivers possession of the Residence to Buyer.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in this Contract. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in this Contract: (a) performance under each Section of this Contract which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (i.e., Acceptance, receipt of the Seller Disclosures, etc.). If the performance date falls on a Saturday, Sunday, State or Federal legal holiday, performance shall be required on the next business day. Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to this Contract, except as otherwise agreed to in writing by such non-party.

**22. FAX TRANSMISSION AND COUNTERPARTS.** Facsimile (fax) transmission of a signed copy of this Contract, any addenda and counteroffers, and the retransmission of any signed fax shall be the same as delivery of an original. This Contract and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) communicates to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to this Contract:

| | |
|---|---|
| (a) Application Deadline | 7 days after Acceptance |
| (b) Pre-Qualification Deadline | 21 days after Acceptance |
| (c) Seller Disclosure Deadline | 7 days after Acceptance *JG* |
| (d) Evaluations & Inspections Deadline | No later than 10 days after Buyer's receipt of Seller's Disclosures |
| (e) Substantial Completion Deadline | No later than 9 months after Commencement of Construction |
| (f) Settlement Deadline | 7 days after the Buyer's receipt of written Notice of Substantial Completion |

Page 7    Buyer's Initials _____    Date 5·5·05    Seller's Initials [    ]    Date_____

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: _____ [   ] AM [   ] PM **Mountain Time** on the _____ day of _____ 20___, this offer shall lapse; and the Brokerage shall return the Earnest Money Deposit to Buyer.

(Buyer's Signature) _____  (Offer Date) 5.5.05    (Buyer's Signature) _____  (Offer Date) 5.5.05

**The later of the above Offer Dates shall be referred to as the "Offer Reference Date"**

LES GOODWIN
(Buyers' Names) **(PLEASE PRINT)**                (Notice Address)                (Phone)

## ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**

[   ] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[   ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached Counter Offer No._____.

_____
Seller: Hole No. 4 LLC          (Date) (Time)
By: North American Partners II LLC, Manager
By: David Dowie, Manager

[   ] **REJECTION:** Seller Rejects the foregoing offer.

_____
Seller: Hole No. 4 LLC          (Date) (Time)
By: North American Partners II LLC, Manager
By: David Dowie, Manager

## DOCUMENT RECEIPT

State law requires Broker to furnish Buyer and Seller with copies of this Contract bearing all signatures. (Fill in applicable section below.)

A. I acknowledge receipt of a final copy of the foregoing Contract bearing all signatures:

_____        _____        _____        _____
(Buyer's Signature)              (Date)          (Buyer's Signature)              (Date)


_____        _____        _____        _____
(Seller's Signature)             (Date)          (Seller's Signature)             (Date)

B. I personally caused a final copy of the foregoing Contract bearing all signatures to be [   ] faxed [   ] mailed [   ] hand delivered on _____ , 20____ postage prepaid, to the [   ] Seller [   ] Buyer. Sent/Delivered by (specify)

Page 8      Buyer's Initials _____   Date 5·5·05      Seller's Initials [      ]      Date _____

**EXHIBIT "A"**

BLANK FORM PRE-QUALIFICATION LETTER

(ON LETTERHEAD OF BANK OR MORTGAGE COMPANY)

(Date)

_____
_____
_____

Re:   Loan Application of _____ for the purchase of Residence # __12__.
      Tumberry Woods, Park City, Utah

Dear Member/Manager of Hole No. 4 LLC:

This   letter   shall   serve   as   confirmation   from   the   lender   named   below   (the   "Lender")   that
_____ has been approved for a loan for the purchase of the above-referenced Residence.
The Buyer's credit report and income-to-debt ratios are satisfactory to the Lender and subject only to verification of the
information contained in the loan application, the Lender will grant the loan.

Very truly yours,

_____
(Signature of Loan Officer)

Page 9      Buyer's Initials [ ]      Date  5·5·05      Seller's Initials [      ]      Date _____

Exhibit "B"

**TURNBERRY WOODS P.U.D.**
**HOLD HARMLESS AGREEMENT & RELEASE**
**(Golf Balls & Golfers)**

The undersigned (hereinafter the Buyer) forever releases, discharges and acquits "Hole No. 4 LLC" (hereinafter the Seller), and The Homestead Resort together with it's agents, employees, attorneys, assigns, and successors in interest, and each of them, of and from any and all claims, demands, liabilities, cause or causes of action, damages, costs, losses and expenses of every kind, nature and description or character, including all claims, assigned, whether heretofore existing, now existing or hereafter arising, which could, might or may be claimed to exist, whether known or unknown, each as thoughtfully set forth herein, which arise out of, are connected with, or are related to any and all damages caused by errant golf balls from the Homestead Golf Course, and any trespasses, damages, assaults or other incidents which may arise out of contacts with golfers and parties accompanying them. Buyer agrees that the Seller has made no representations whatsoever concerning safety or damage as it relates to the proximity of the Homestead Golf Course.

Buyer agrees to assume all risks of any kind caused by errant golf balls. Buyer states that Seller has made no representations regarding the safety of the Homestead Golf Course. Buyer specifically waives and relinquishes all rights that Buyer may have against Seller for damages caused by errant golf balls under any statue dealing with the release of unknown or undisclosed claims.

BUYER: _Lee Goodwin_ DATED: _5·5·05_

BUYER: _Mary Lea Goodwin_ DATED: _5·5·05_

LOT#: _12_

Page 10     Buyer's Initials _____     Date _5·5·05_     Seller's Initials [     ]     Date_____

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

AUG 15 2006

MARKUS B. ZIMMER, CLERK

BY _____
DEPUTY CLERK

✎JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff   San Luis Obispo, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Samuel E. Goldstein & Associates, 1777 Botelho Drive, Suit 345, Walnut Creek, CA 94596; (925) 906-4700

Attorneys (If Known)

Craig A. Hoggan, Dart, Adamson & Donovan, 370 East South Temple, Suite 400, Salt Lake City, UT 84111; (801) 521-6383

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332 (Diversity)

Brief description of cause:
Breach of Contract for Sale of Real Property

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   8-10-06

SIGNATURE OF ATTORNEY OF RECORD   _Steven W. Taylor_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

Judge Paul G. Cassell
DECK TYPE: Civil
DATE STAMP: 08/15/2006 @ 16:23:59
CASE NUMBER:  2:06CV00679  PGC